UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff-Appellee,<br><br>v.<br><br>CAMILO ERNESTO GUARDADO-CARPIO,<br><br>                          Defendant-Appellant. | Case No.:  19-CR-2884-MDD-DMS<br><br>**ORDER VACATING AND REMANDING** |

On January 27, 2020, Defendant-Appellant Camilo Ernesto Guardado-Carpio ("Defendant" or "Guardado-Carpio") filed a timely notice of appeal to the district court. (ECF No. 30.)  This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402. For the reasons discussed below, the Court vacates the judgment and remands the case for further proceedings.

## I.

## BACKGROUND

On June 4, 2019, a U.S. Marine stationed at an observation point near the southwest border observed an individual, later identified as Guardado-Carpio, running northbound through an area known as "Goat Canyon," approximately four miles east of the San Ysidro, California, Port of Entry.  (Ex. 2 to ECF No. 17.)  The Marine reported Guardado-Carpio's

movement via radio to U.S. Border Patrol agents in the area. (*Id.*) Border Patrol agents responded and communicated with the Marine about Guardado-Carpio's movements and appearance for approximately ten minutes. (Ex. A to ECF No. 21; ECF No. 45.) Subsequently, Border Patrol Agent Michael Wholton contacted Guardado-Carpio at the north end of Goat Canyon. (Ex. 2 to ECF No. 17; Trial Tr., Ex. B to ECF No. 42, at 17–25.) Agent Wholton asked Guardado-Carpio if he was a U.S. citizen, and Guardado-Carpio stated he was a citizen of El Salvador. (Ex. 2 to ECF No. 17.) Guardado-Carpio was arrested under suspicion he had illegally entered the United States. (*Id.*)

On July 30, 2019, Plaintiff-Appellee the United States of America ("United States" or "Government") filed an information charging Defendant Guardado-Carpio with attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1), a misdemeanor. (ECF No. 12.) As relevant to this appeal, Guardado-Carpio filed a motion to dismiss the information and a motion to compel discovery, alleging the involvement of a Marine in his apprehension violated the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385, and related statutes and regulations. (ECF No. 17.) The magistrate judge denied Guardado-Carpio's motions. (Mot. Hrg. Tr., Ex. A to ECF No. 42, at 4, 9–13.) The magistrate judge did not reach the issue of whether there had been a PCA violation. (*Id.* at 9.) Rather, the magistrate judge found that even assuming a PCA violation, there was no evidence that such violations were widespread as to require suppression or dismissal. (*Id.* at 3–4, 9–10.) The magistrate judge further denied Guardado-Carpio's request for discovery regarding the number of Marines sent to the border and engaged in similar conduct as in the instant case. (*Id.* at 11–12.) The magistrate judge reasoned that if violations of PCA restrictions were frequent, the court "would see it in more regular motions." (*Id.* at 12.)

Guardado-Carpio proceeded to trial on January 27, 2020. (ECF No. 27.) He requested the court reconsider its denial of his prior motions, which request the magistrate judge denied. (*See* Trial Tr. 4:18–22.) At trial, Agent Wholton testified the Marine involved in the instant case was working as a lookout on an "observation post" on June 4, 2019. (*Id.* at 35:13–19.) Agent Wholton did not know how many Marines were working

on the observation post that day. (*Id.* at 35:20–22.)  Agent Wholton testified Marines on the observation post broadcast radio dispatches regarding potential suspects to Border Patrol agents in the field "on a daily basis." (*Id.* at 36:10–12, 37:17–38:10.)

After eliciting this testimony about the Marines' involvement, Guardado-Carpio requested the court reopen proceedings regarding the alleged PCA violation.  (*Id.* at 35–38, 61.)  The magistrate judge denied this request, finding a lack of evidence that any alleged violation was sufficiently widespread to trigger the potential remedy suggested by the Ninth Circuit.  (*Id.* at 61); *see United States v. Dreyer*, 804 F.3d 1266, 1277–80 (9th Cir. 2015).

The court found Guardado-Carpio guilty of attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1) and sentenced him to time served.  (Trial Tr. at 71, 74.)  This appeal followed.

## II.

## DISCUSSION

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."  18 U.S.C. § 3402.  "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry."  Fed. R. Crim. P. 58(g)(2)(B).  The appeal's scope is "the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).

On appeal, Guardado-Carpio raises two challenges to his conviction.  First, he argues the magistrate court erred by denying his motion for relief based on violations of the PCA and 10 U.S.C. § 275.  Second, he argues the magistrate judge erred by denying his requests for discovery and for an evidentiary hearing regarding the alleged violations.

### A. PCA Violation

Guardado-Carpio argues the magistrate judge erred in denying his motion to dismiss, alleging such remedy is warranted because the involvement of a U.S. Marine in his

surveillance and arrest violates the PCA and 10 U.S.C. § 275.  The Government contends there was no violation and thus the magistrate judge's ruling should be affirmed.

The Government argues the lower court's "refusal to impose sanctions" is reviewed for abuse of discretion.  *See United States v. Roberts*, 779 F.2d 565, 568 (9th Cir. 1986), *superseded on other grounds as recognized by United States v. Khan*, 35 F.3d 426, 432 (9th Cir. 1994).  Guardado-Carpio asserts this matter is subject to *de novo* review.  (Def.'s Br. 11); *see Dreyer*, 804 F.3d at 1271 (stating court reviews *de novo* denial of motion to suppress, as well as alleged violation of the PCA and the related statute and regulations as mixed question of fact and law).  The Court need not rule on the standard of review at this time because, as set forth below, the Court remands this matter for further proceedings before the magistrate judge.

"The PCA prohibits Army and Air Force military personnel from participating in civilian law enforcement activities."  *United States v. Chon*, 210 F.3d 990, 993 (9th Cir. 2000); *see* 18 U.S.C. § 1385.  Its purpose is "to uphold the American tradition of restricting military intrusions into civilian affairs, except where Congress has recognized a special need for military assistance in law enforcement."  *United States v. Johnson*, 410 F.3d 137, 146–47 (4th Cir. 2005).  A separate statute, 10 U.S.C. § 275, directs the Secretary of Defense to prescribe regulations prohibiting "direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law."  Consistent with this provision, the Ninth Circuit has held that "although the PCA does not directly reference the Navy or Marine Corps, Congress prohibits Navy involvement in enforcing civilian laws."  *Dreyer*, 804 F.3d at 1272 (internal quotation marks and alteration omitted).  The statute's effect is to apply the PCA's prohibition to other branches of the armed forces.  Department of Defense ("DOD") internal guidance further details these restrictions on direct assistance.  (*See* DOD Instruction 3025.21, Enclosure 3, § 1(c) (effective Feb. 8, 2019), App'x to Gov't's Br., ECF No. 43-1.)  The Court refers to this body of law—the PCA, § 275, and related regulations—as "PCA restrictions."

Section 275 provides an exception to the prohibition on military involvement in civilian law enforcement, permitting such activity where it is "otherwise authorized by law." 10 U.S.C. § 275. The DOD guidance reiterates this exception, permitting "[a]ctions taken under express statutory authority to assist officials in executing the laws." DOD Instruction 3025.21, Enclosure 3, § 1.b(5). Further, the PCA and its related restrictions do not prohibit the military from providing "indirect assistance to civilian authorities that does not subject civilians to the exercise of military power that is regulatory, proscriptive, or compulsory in nature." *Khan*, 35 F.3d at 431 (internal quotation marks and citations omitted).

In *United States v. Dreyer*, the Ninth Circuit, sitting *en banc*, stated application of the exclusionary rule may be a remedy for a violation of PCA-like restrictions, but declined to apply such remedy to the conduct of the Navy at issue there. 804 F.3d at 1277–81. It affirmed exclusion is inappropriate absent "a showing of widespread and repeated violations *and* a need for the remedy." *Id.* at 1279 (internal quotation marks, emphasis in original); *see United States v. Rios-Montano*, 438 F. Supp. 3d 1149, 1151 (S.D. Cal. 2020) ("If the facts demonstrate 'widespread and repeated [PCA] violations' and 'a need for the remedy' of suppression, the Court may invoke the exclusionary rule against the offending party to exclude evidence derived from the violative conduct.") (quoting *Dreyer*, 804 F.3d at 1279). Here, Guardado-Carpio sought dismissal of the information, an even more drastic remedy than suppression. *See United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993) (noting dismissal of indictment is "extreme remedy").

In denying Guardado-Carpio's motion to dismiss the information, the magistrate judge assumed without deciding that there was a violation of PCA restrictions, finding only that the remedy of dismissal was not warranted because there was insufficient evidence that any such violations were "widespread and repeated."[1] The issue on appeal therefore

---

[1] At the motion hearing, the magistrate judge stated: "I'm not finding whether or not there's a violation or whether or not the authorization act … covers this conduct." (Mot. Tr. 9:19–

19-CR-2884-MDD-DMS

1    is not whether there was a § 275 violation in the first instance, but whether the magistrate

2    judge erred by finding any violations were insufficiently widespread as to warrant

3    suppression or dismissal of the charges.  *See Dreyer*, 804 F.3d at 1279–80.  Guardado-

4    Carpio argues the magistrate judge erred by basing the denial of the motion to dismiss on

5    (1) whether there were multiple Marines involved in Guardado-Carpio's arrest and (2) the

6    number of PCA-related motions filed in the Southern District of California.

7         The Court declines to decide whether the magistrate judge erred by finding the

8    violations were not widespread, because as the magistrate judge stated, "there's still an

9    open question as to whether it's a violation [of § 275] at all."  (Trial Tr. 61:9–10.)  Other

10   cases in this District have found no violation of PCA restrictions on similar facts.  *See Rios-*

11   *Montano*, 438 F. Supp. 3d at 1154; *United States v. Cardenas-Tovar*, No. 3:19-CR-04370-

12   BTM, 2020 WL 905634, at *3 (S.D. Cal. Feb. 25, 2020).  If the Marines' actions in this

13   case did not constitute a violation of § 275 in the first instance, then the Court need not

14   reach the issue of whether suppression or dismissal is warranted.  Accordingly, the Court

15   remands the case for the magistrate judge to determine the threshold issue of whether a

16   violation of § 275 occurred.

17   **B. Discovery**

18        Guardado-Carpio next contends the magistrate judge erred by denying his request

19   for discovery on the issue of PCA-related violations.  He argues the court's denial was

20   error because it was based on a desire to avoid continuances resulting from discovery and

21   the court misapprehended the nature of the discovery request by focusing on the number

22   of Marines involved in the instant case rather than whether similar violations were

23   occurring repeatedly.

24        Discovery rulings are reviewed for abuse of discretion.  *United States v. Stever*, 603

25   F.3d 747, 752 (9th Cir. 2010).  The Government argues Guardado-Carpio's request for

26

_____

27

28   21.)   In denying Guardado-Carpio's request to reopen proceedings at trial, the court
     reiterated it was not deciding the issue of whether a violation occurred. (Trial Tr. 61:9–10.)

discovery to support his PCA arguments is barred by *United States v. Armstrong*, 517 U.S. 456 (1996).  Guardado-Carpio asserts *Armstrong* applies only to discovery in selective prosecution cases, relying on *United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016).

The Court finds once again this issue is best resolved by addressing the threshold question of whether a violation of PCA restrictions occurred in the first instance.  If there was no violation to begin with, the issue of discovery regarding further violations to establish a "widespread and repeated" nature under *Dreyer* is moot, and the court need not address the issue of whether the discovery request is barred by *Armstrong*.  Accordingly, the Court remands for the magistrate judge to address whether a violation occurred, as directed above, and if so, whether it merits discovery.

## III.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court VACATES the judgment and REMANDS this case to the magistrate judge for further proceedings.

**IT IS SO ORDERED.**

Dated:  December 21, 2020

Hon. Dana M. Sabraw
United States District Judge